# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **CHARLES WILLIAM THORNBURG,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WILLIAMSON COUNTY, TEXAS,** | § | |
| **OFFICER ROBERT CHODY, FRANK** | § | |
| **SAENZ, LORENZO HERNANDEZ,** | § | |
| **CHRISTOPHER PISA, TIM RYLE,** | § | |
| **STEPHEN DEATON, MARK LUERA,** | § | |
| **JAMES JOHNSON, BRIAN DIRNER,** | § | **Case No. 1:21-cv-00172-LY-SH** |
| **JEREMY STEWART, ROEL ALAFA,** | § | |
| **JASON BRANTLEY, CHARLES** | § | |
| **DUVALL, MARCO GOMEZ,** | § | |
| **TRE'VONE JOHNSON, JASON** | § | |
| **JOHNSTON, JUSTIN KOPTA, DAVID** | § | |
| **NICKEL, DAVID OBERG, MATTHEW** | § | |
| **PANIAGUA, WAYNE PASSAILAIGUE,** | § | |
| **KYLE PENCE, CHRIS PINA,** | § | |
| **ALEJANDRO TORRES, JOE** | § | |
| **WARING, JOSH WHINNERY, and** | § | |
| **KEVIN WILLIS,** | § | |
| *Defendants* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are:

- Defendant Stephen Deaton's Motion to Dismiss Plaintiff's Third Amended Complaint, filed December 23, 2021 (Dkt. 145);

- Defendant Mark Luera's Motion to Dismiss Plaintiff's Third Amended Complaint, filed December 23, 2021 (Dkt. 147);

- Defendants Brian Dirner, Marco Gomez, David Oberg, Matthew Paniagua, Wayne Passailaigue, and Chris Pina's Motion to Dismiss Plaintiff's Third Amended Complaint, filed January 6, 2022 (Dkt. 151);

- Defendant Williamson County's Motion to Dismiss Plaintiff's Third Amended Complaint, filed January 6, 2022 (Dkt. 152);

- Defendant Frank Saenz's Motion to Dismiss Plaintiff's Third Amended Complaint, filed January 6, 2022 (Dkt. 153);

- Defendants Jason Johnston, Jason Brantley, Roel Alafa, Lorenzo Hernandez, James Johnson, David Nickel, and Kyle Pence's Motion to Dismiss Plaintiff's Third Amended Complaint, filed January 6, 2022 (Dkt. 154);

- Defendant Robert Chody's Motion to Dismiss Plaintiff's Third Amended Complaint, filed January 10, 2022 (Dkt. 158);

- Defendant Tim Ryle's Motion to Dismiss Plaintiff's Third Amended Complaint, filed January 10, 2022 (Dkt. 160);

- Defendant Chris Pisa's Motion to Dismiss Plaintiff's Third Amended Complaint, filed January 10, 2022 (Dkt. 161);

- Defendants Charles Duvall, Tre'vone Johnson, Justin Kopta, Jeremy Stewart, Alejandro Torres, Joe Waring, Josh Whinnery, and Kevin Willis' Motion To Dismiss Plaintiff's Third Amended Complaint, field January 10, 2022 (Dkt. 162);

and the associated response and reply briefs.[1]

## I.  Background

### A.  Live PD

In January 2018, Williamson County, Texas Sheriff Robert Chody entered into a contract with "Live PD," a television show that follows officers on patrol and broadcasts live and pre-recorded encounters for a nationwide audience. Plaintiff's Third Am. Compl., Dkt. 138 ¶ 18. The contract, which was approved by the Williamson County Commissioners Court, permitted Live PD to film Williamson County law enforcement activities. *Id.* ¶¶ 19, 21-24. Thornburg alleges that "[d]uring the weeks when the Live PD show filmed with the Sheriff's office, deputies used force significantly more often than during weeks when cameras were not on patrol." *Id.* ¶ 27. In addition, Thornburg alleges that once filming began, car chases rose by 54% and deputies began using

---

[1] On May 28, 2021, the District Court referred all pending and future motions in this case to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 105.

TASERs nearly twice as often as the previous year. *Id.* ¶¶ 31, 33. "Having the TV cameras rolling encouraged deputies to use more aggressive police tactics that would make a better chance of being aired on Live PD." *Id.* ¶ 36.

Thornburg alleges that Chody was in charge of approving any video footage that would air on Live PD. Thornburg further contends that Chody encouraged and rewarded deputies for using excessive force against citizens instead of de-escalating because it made more "entertaining" video for Live PD. Thornburg alleges that Chody rewarded deputies for using force by giving them gift cards to steakhouses and calling them "Wilco Badasses." *Id.* ¶¶ 29, 163, 249.

**B. Thornburg's Arrest**

On February 23, 2019, at approximately 11:30 p.m., Stephanie Jumper called 911 to report that her husband, Plaintiff Charles William Thornburg, was suicidal and had told her to "[l]eave if you don't want to die with me." *Id.* ¶¶ 54, 108. Two Williamson County Sheriff's Office deputies were dispatched to Thornburg's house. When the two deputies arrived, Jumper told them that she "had removed two weapons from their home and placed them in the trunk of her car for her husband's safety" and waited until her husband went to bed before making the call. *Id.* ¶ 54. She also informed the deputies that her 81-year-old mother-in-law was inside the house. Plaintiff alleges that the deputies then contacted "command" headquarters, and "it was decided this was an opportunity to use force." *Id.* ¶ 55.

Thornburg alleges that Williamson County dispatched to his home Chody, twenty-six officers, a SWAT team, police dogs, a helicopter (with telescoping light and video camera), and an ambulance. Thornburg alleges that around 2 a.m., he "was awakened from sleep in his bed, when he heard knocking and someone identifying as law enforcement saying words that meant come outside with your hands up." *Id.* ¶ 65. Thornburg further alleges that he complied with the request

by walking outside in his pajama bottoms with his hands held up. *Id.* ¶ 67. Thornburg contends that he was unarmed. Thornburg further alleges that the deputies did not tell him that he was under arrest, but told him to get on the ground. Thornburg avers that he complied with their requests, but then heard someone order a deputy to "release the dog" *Id.* ¶ 83. Thornburg contends that the Defendants allowed the dog to bite "his penis, his testicles, his stomach, and his thighs" for approximately five minutes while he was unconscious on the ground, and that the bites required hospitalization and surgery. *Id.* ¶¶ 95-97, 104. Thornburg further alleges that he "was hit in the head and knocked unconscious by Deputy Lorenzo Hernandez with a rifle butt, a baton, or some other blunt object," breaking the orbital socket around his eye. *Id.* ¶ 104. He further alleges that the deputies used TASERS on him and shot him with beanbags "while he was not resisting arrest and was being attacked by a canine." *Id.* ¶¶ 99, 101.

Thornburg contends that Chody and the supervising officers conferred, supervised, and approved of the use of excessive force on him, witnessed the entire incident, and did nothing to stop it. *Id.* ¶¶ 83, 114. Thornburg alleges that the Defendants all turned off their body cameras during the arrest. *Id.* ¶ 116. He further alleges that he was arrested for "an alleged misdemeanor charge," which was never prosecuted. *Id.* ¶ 269.

Defendants dispute Thornburg's version of the facts and contend that he made threats against his wife, resisted arrest, and injured the police dog. *Id.* ¶¶ 110, 111.

## C. Thornburg's Suit

On February 22, 2021, Thornburg filed this civil rights lawsuit, naming as defendants Williamson County, Chody, and Deputies Hernandez, Frank Saenz, and Christopher Pisa, who were listed in the report of Thornburg's arrest. Dkt. 1; Dkt. 167 at 6. Thornburg also named "Unknown Deputies" as John Doe defendants. Dkt. 1 ¶ 1(f). Thornburg filed his First Amended

Complaint on March 24, 2021, adding excessive force claims against the "Unknown Deputies." Dkt. 13. The next day, after counsel for Williamson County provided the names of all deputies who participated in his arrest, Thornburg moved for leave to file his Second Amended Complaint, which was granted on March 26, 2021. Dkts. 14, 17. The Second Amended Complaint named twenty-three deputies in place of the John Doe defendants. Dkt. 18. On December 9, 2021, the District Court granted Thornburg leave to file his Third Amended Complaint, which is his live pleading.

In the Third Amendment Complaint, Thornburg asserts claims for excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Williamson County, Chody, and the deputies in their individual capacities, and claims against the County for failure to train and supervise. Defendants now move to dismiss Thornburg's Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standards

### A. Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do. Factual allegations must be enough to raise a right
> to relief above the speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a

Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry

is generally limited to (1) the facts set forth in the complaint, (2) documents attached to the

complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence

201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

## B.  Section 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law . . . .

To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured

by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation

was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638

(5th Cir. 2013). Claims under Section 1983 may be brought against persons in their individual or

official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395

(5th Cir. 2009). While municipalities can be sued directly under Section 1983, *Monell v. Dep't of

Soc. Servs.*, 436 U.S. 658 (1978), establishes that they cannot be found liable on a theory of

vicarious liability or respondeat superior. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214

(5th Cir. 2019). "In other words, 'the unconstitutional conduct must be directly attributable to the

6

municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). A municipality is liable under Section 1983 for its officers and employees' actions when they are executing an official policy or custom. *Piotrowski*, 237 F.3d at 579.

### III.  Williamson County's Motion to Dismiss

Williamson County argues that Thornburg's Section 1983 *Monell* claim fails because he has not pled facts establishing that the County had a policy or practice that caused a violation of his constitutional rights. To establish municipal liability under Section 1983, a plaintiff must plead facts that plausibly establish (1) an official policy (2) promulgated by the municipal policymaker (3) that was the "moving force" behind the violation of the constitutional right. *Piotrowski*, 237 F.3d at 578.

### A.  Policymaker

Whether a particular official has final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1986). Under Texas law, the county sheriff is the county's final policymaker in the area of law enforcement. *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Accordingly, at the time of Thornburg's arrest, Chody was the final policymaker for law enforcement activities for Williamson County.

### B.  Official Policy

"Official policy establishes culpability, and can arise in various forms." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). Official policy usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* In addition, a single unconstitutional action may constitute municipal policy in "rare

circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Webb,* 925 F.3d at 215 (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81 (1986)). A municipality's decision not to train or supervise its employees about their legal duty to avoid violating citizens' rights also may rise to the level of an official policy for purposes of Section 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). Finally, a policy can be shown in "extreme factual situations" where "the authorized policymakers approve a subordinate's decision and the basis for it," thereby ratifying the subordinate's unconstitutional actions. *Peterson*, 588 F.3d at 848 (quoting *Praprotnik*, 485 U.S. at 127).

Although the parties' briefing is not entirely clear as to whether Thornburg has alleged a policy, he appears to argue that Williamson County had an unconstitutional policy of using excessive force because (1) Chody, the policymaker, was personally involved in the violation of Thornburg's constitutional rights; (2) the County failed to train its officers to avoid violating its citizens' Fourth Amendment rights; and (3) Chody ratified the officers' use of excessive force.

### 1. Single Act

A single unconstitutional action "may be sufficient in rare circumstances to impose municipal liability under *Monell*, if undertaken by the municipal official or entity possessing 'final policymaking authority' for the action in question." *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016). "An unconstitutional policy may be found when a policymaker performs the specific act that forms the basis of the § 1983 claim." *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017).

Thornburg alleges that Chody was present during his arrest and was one of the supervisors "named in Williamson County records as supervising, giving instruction, or giving orders during the arrest." Dkt. 138 ¶ 1(dd). Thornburg further alleges that: "When [Chody] approved and/or

acquiesced in the use of a canine to bite an unconscious arrestee knowing he was unconscious or at least not resisting arrest, he made an unconstitutional policy of using excessive force on a subdued arrestee." *Id.* ¶ 115.[2]

At the motion to dismiss stage of a proceeding, the Court must assume that all allegations in the complaint are true. *Twombly*, 550 U.S. at 555. Thornburg has alleged sufficient facts to support his claim that Chody performed the specific act that formed the basis of the alleged constitutional deprivation by ordering an unconstitutional use of force on him during his arrest. *See Pembaur*, 475 U.S. at 485 ("In ordering the Deputy Sheriffs to enter petitioner's clinic the County Prosecutor was acting as the final decisionmaker for the county, and the county may therefore be held liable under § 1983."); *Howell v. Town of Ball*, 827 F.3d 515, 529 (5th Cir. 2016) (holding that plaintiff offered sufficient evidence to create a fact issue regarding whether the city was liable for retaliatory discharge of plaintiff either through its own motivation or ratification of police chief's motive); *Anderson v. City of McComb, Miss.*, 539 F. App'x 385, 388 n.2 (5th Cir. 2013) (holding that terminated police officer suing city for false arrest and violation of due process alleged sufficient facts to establish a municipal policy where he alleged that his arrest was ordered by chief of police, who was the policymaker). "When the policymakers are the violators, no further proof of municipal policy or custom is required." *Anderson*, 539 F. App'x at 388 n.2.

---

[2] Williamson County argues that "Plaintiff's 'on information and belief' allegations are insufficient for the Court to draw reasonable inferences that the County is liable for the misconduct alleged." Dkt. 179 at 3. Thornburg's Third Amended Complaint does not allege only "on information and belief," but also alleges that Chody was present during his arrest and approved of the alleged unconstitutional use of excessive force. *See, e.g.*, Dkt. 138 ¶ 1(dd) (stating that Chody was "present and . . . named in the Williamson County records as supervising, giving instruction, or giving orders during the arrest of Charles William Thornburg ('Thornburg') on the morning of February 24, 2019 at Thornburg's residence"); ¶ 51 ("Sheriff Chody was aware of the actions of his deputies and the fact that the suspect was not armed nor an immediate threat through actual knowledge or constructive knowledge."); ¶ 72 (stating that a deputy identified Chody as being present at the scene); ¶ 115 ("When [Chody] approved and/or acquiesced in the use of a canine to bite an unconscious arrestee knowing he was unconscious or at least not resisting arrest, he made an unconstitutional policy of using excessive force on a subdued arrest.").

For these reasons, Thornburg has alleged sufficient facts to show a policy of using unreasonable excessive force based on Chody's personal involvement in Thornburg's arrest.

## 2. Failure to Train

The Court also finds that Thornburg has alleged a policy based on Williamson County's failure to train its officers in the use of excessive force. When a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes "official policy" that can support municipal liability if it "amounts to deliberate indifference." *Canton*, 489 U.S. at 388. To prove deliberate indifference at trial, a plaintiff must show that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

There are two means of proving deliberate indifference. Sometimes, municipal employees violate constitutional rights "so often" that the factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers." *Id.* at 390 n.10. This proof-by-pattern method is "ordinarily necessary." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). Even absent proof of pattern, deliberate indifference can be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id.* The municipal entity must have "fail[ed] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Canton*, 489 U.S. at 396. Thus, "if a city policymaker opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a

factfinder may reasonably infer that the city acted with the requisite deliberate indifference." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 625 (5th Cir. 2018).

Here, Thornburg alleges that Williamson County wholly failed to train its officers "concerning the use of force when seizing a person who is unarmed, not fleeing, and not resisting arrest," as well as "when and how to stop the use of excessive force by another officer in their presence." Dkt. 138 ¶¶ 249(i)-(j). Thornburg further alleges that:

> the known and obvious consequence of the policies delineated above were that the Williamson County Sheriff and his deputies would be placed in recurring situations in which the constitutional violations of excessive force described within this complaint would result. Accordingly, these policies also made it highly predictable that the excessive force violations alleged here, all of which were under color of law, would result.

*Id.* ¶ 251.

The Court finds that Thornburg has alleged sufficient facts to permit the reasonable inference that the risk of officers using unreasonable excessive force on citizens was or should have been a "highly predictable consequence" of the County's decision to provide its staff no training regarding the Constitution's constraints on the use of excessive force when seizing a person who is unarmed, not fleeing, and not resisting arrest. In other words, his claim has facial plausibility. *See Littell*, 894 F.3d at 625 (holding that students sufficiently alleged deliberate indifference where they alleged that risk of school officials conducting unconstitutional searches was or should have been a highly predictable consequence of school district decision to provide its staff no training regarding Constitution's constraints on searches).[3]

---

[3] The Court need not address Thornburg's ratification theory because he has alleged sufficient facts to show a policy under his first two theories.

### C. Moving Force

Thornburg also must show that the policy was the "moving force" behind the constitutional violation. *Peterson*, 588 F.3d at 848. Thornburg alleges that, because of the policy of using excessive force, the Williamson County deputies unreasonably employed a TASER, beanbag shotgun, and police dog during his arrest, in violation of his Fourth Amendment rights.

Williamson County argues that Thornburg has not pled a causal link between Chody's alleged policy of using excessive force for Live PD and Thornburg's alleged injury because Live PD was not present at his arrest. Dkt. 152 at 8. But Thornburg alleges that Chody's policy of using excessive force caused his constitutional violation and did not depend on the presence of Live PD. The facts Thornburg alleges in his Complaint state a plausible claim that Williamson County's policy was the "moving force" behind his alleged Fourth Amendment deprivation.

Based on the foregoing, Thornburg alleges sufficient facts to state a *Monell* claim against Williamson County. Accordingly, Williamson County's Motion to Dismiss should be denied.

### IV. Individual Defendants' Motions to Dismiss

The Court next addresses Thornburg's claims against Chody and twenty-six Williamson County deputies. The individual defendants argue that (1) the claims against the twenty-three deputies named for the first time in the Second Amended Complaint are time-barred; (2) Thornburg has failed to meet the pleading standard for Section 1983 claims; and (3) Chody and the deputies are entitled to qualified immunity.

### A. Statute of Limitations

The limitations period for a Section 1983 claim is determined by the forum state's statute of limitations governing actions for personal injury. *Owens v. Okure*, 488 U.S. 235, 240-41 (1989); *Piotrowski*, 237 F.3d at 576 (5th Cir. 2001). In Texas, the limitations period for personal injury actions is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2005)). A cause of

action under Section 1983 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Price v. City of San Antonio*, 431 F.3d 890, 893 (5th Cir. 2005), *abrogated on other grounds by Wallace v. Kato*, 549 U.S 384, 390 (2007) (citations omitted); *see also Piotrowski*, 237 F.3d at 576 (stating that limitations period "begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured"). An excessive force claim generally accrues on the date when the force is inflicted. *Morrill v. City of Denton, Tex.*, 693 F. App'x 304, 306 (5th Cir. 2017) (per curiam) (citing *Price*, 431 F.3d at 893-94).

A civil rights action may be initiated against unidentified defendants when their true names are not yet known but may be learned. *Gage v. Unknown Dallas Police Officer*, No. 3:11-CV-1599-D-BH, 2011 WL 5979386, at *1 (N.D. Tex. Sept. 22, 2011) (citing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 390 n.2 (1971)). "Although the use of a 'John Doe' is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants." *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007); *see also Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (stating that plaintiff should be given the opportunity to discover the identities of unnamed defendants in certain circumstances). However, an amendment to substitute a named party for a John Doe does not relate back to the original complaint under Federal Rule of Civil Procedure 15(c). *Whitt v. Stephens Cnty.*, 529 F.3d 278, 283-84 (5th Cir. 2008).

Thornburg was arrested by the defendant deputies on February 24, 2019. That is the day on which he knew or should have known about the injuries underlying his excessive force claim. Because his March 26, 2021 Second Amended Complaint naming twenty-three of the defendant

deputies for the first time was filed more than two years after the claim accrued, Thornburg's claims against the deputies named for the first time in that complaint are time-barred.

Rule 15(c)(1)(C)(ii) provides that an amendment will relate back to the date of the original pleading when the party brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Thornburg argues that this clause "is satisfied or at least a fact issue because the Defendants should have known that they would have been named in the original complaint when they were served with the amended complaint which named them as Defendants." Dkt. 167 at 58-59. Plaintiff's argument is foreclosed by Fifth Circuit precedent, which clearly establishes that "an amendment to substitute a named party for a John Doe does not relate back under rule 15(c)." *Whitt v. Stephens Cnty.*, 529 F.3d 278, 283.

Thornburg did not file his original complaint until February 22, 2021, two days before the end of the limitations period. His inability to timely determine the identities of the unknown deputies was attributable to his decision to file suit so close to the end of the limitations period, not a "mistake concerning the proper party's identity," as required for relation back under Rule 15(c)(1)(C)(ii). *See Balle v. Nueces Cnty.*, 952 F.3d 552, 558 (5th Cir. 2017) (affirming dismissal of Section 1983 claim where plaintiff filed suit one week before end of limitations period, then amended to substitute named defendants for Jane Does after limitations had run). Accordingly, the undersigned Magistrate Judge recommends that the District Court dismiss as time-barred the Section 1983 claims against the following twenty-two[4] Defendants:

---

[4] Defendant Tim Ryle was one of the twenty-three deputies named for the first time in the Second Amended Complaint, but he did not move to dismiss based on statute of limitations. Dkt. 160. "[I]n an ordinary civil case, where the court has no special duty to examine the pleadings, the affirmative defense of statute of limitations can be waived and may not be raised by the court *sua sponte*." *Matassarin v. Grosvenor*, No. 5:13-CV-913-RP, 2015 WL 12734173, at *1 (W.D. Tex. July 24, 2015) (citing *Lebouef v. Island Operating Co.*, 342 F. App'x 983, 984 (5th Cir. 2009)).

Stephen Deaton, Mark Luera, Brian Dirner, Marco Gomez, David Oberg, Matthew Paniagua, Wayne Passailaigue, Chris Pina, Jason Johnston, Jason Brantley, Roel Alafa, James Johnson, David Nickel, Kyle Pence, Charles Duvall, Tre'vone Johnson, Justin Kopta, Jeremy Stewart, Alejandro Torres, Joe Waring, Josh Whinnery, and Kevin Willis.

## B. Pleading Standard

The remaining individual defendants—Sheriff Chody, Deputy Chief Ryle, Sergeant Saenz, and Deputies Hernandez and Pisa—argue that Thornburg fails to meet the pleading standard for Section 1983 claims. Section 1983 actions are governed by the Rule 8 pleading standard. *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (stating that "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims"). Rule 8(a)(2) requires a claimant to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy the Rule 8 pleading standard, a plaintiff must plead sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678.

Thornburg adequately alleges facts to state plausible Section 1983 claims against Chody, Ryle, Saenz, Hernandez, and Pisa, as further discussed in the next section. Accordingly, the Court recommends that those claims not be dismissed for failure to meet the pleading standard.

## C. Qualified Immunity

For their final argument, Chody, Ryle, Saenz, Hernandez, and Pisa contend that they are entitled to qualified immunity from Thornburg's individual capacity claims. Qualified immunity extends to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official who violates a federal

right is entitled to qualified immunity if his or her actions were objectively reasonable. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993).

Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). To rebut the qualified immunity defense, a plaintiff must plead specific facts showing that (1) the official violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at that time. *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).

### 1.  Violation of Constitutional Rights

For the first element, Thornburg has pled sufficient facts to plausibly state claims for excessive force, bystander liability, and supervisor liability. To be liable under Section 1983, an officer "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017); *see also Magnolia Island Plantation, LLC v. Whittington*, 29 F. 4th 246, 251 (5th Cir. 2022) (stating that "a defendant must either be personally involved in the constitutional violation or commit acts that are causally connected to the constitutional violation alleged") (cleaned up).

The elements of a Fourth Amendment excessive force claim are (1) use of force that was clearly excessive to the need; (2) the excessiveness of the force was objectively unreasonable; and (3) injury resulting from the use of force. *Petta v. Rivera*, 143 F.3d 895, 908 n.15 (5th Cir. 1998). Thornburg alleges that Chody, Ryle, Hernandez, and Saenz "directed this attack on Plaintiff" or "acquiesced in the initial deployment of a dog on an unarmed man and continued assault by the dog, deployment of the TASERs, a beanbag shotgun, and the use of a blunt object to the head." Dkt. 138 ¶ 235. Thornburg alleges that Pisa was one of "the officers who deployed the TASERs at the Plaintiff." *Id.* ¶ 62. He also alleges that he suffered serious injuries as a result of this use of

force. Dkt. 138 ¶¶ 95-96. Thornburg has pled facts supporting each element of a plausible claim for Fourth Amendment excessive force against Chody, Ryle, Saenz, Hernandez, and Pisa.

Under the bystander liability doctrine, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). To prove bystander liability, the plaintiff must show that "the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). Thornburg has alleged that Chody, Ryle, Saenz, Hernandez, and Pisa all were present at his arrest; personally observed the deployment of a TASER, beanbag shotgun, and dog on Thornburg despite his compliance with law enforcement commands; and did nothing to prevent him from being harmed, despite the opportunity to do so. Dkt. 138 ¶¶ 1(ff), 239, 278. Thornburg has alleged facts sufficient to state a claim for bystander liability against Chody, Ryle, Saenz, Hernandez, and Pisa.

To establish supervisor liability for constitutional violations committed by subordinate employees, a plaintiff must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). A supervisor may be held liable only if he (1) affirmatively participates in the acts that cause the constitutional deprivation, or (2) implements unconstitutional policies that causally result in the constitutional injury. *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). "A superior officer issuing a direct order to a subordinate to use excessive force demonstrates both the necessary action and causality for a supervisor-liability claim." *Peña*, 879 F.3d at 621.

Thornburg alleges that Chody, Ryle, Saenz, and Hernandez "were present and are named in Williamson County records as supervising, giving instruction, or giving orders during the arrest."[5] Dkt. 138 ¶ 1(dd). He further alleges that the "command ['release the dog'] was given with the approval of former Sheriff Robert Chody and Deputy Chief Tim Ryle." *Id.* ¶ 83. Accordingly, Thornburg has stated a claim for supervisory liability against Chody, Ryle, Saenz, and Hernandez.

### 2. Clearly Established

Thornburg also must plead specific facts to show that it was clearly established that defendants' conduct was unlawful. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* (citation omitted). This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity "protects officers from the sometimes hazy border between excessive and acceptable force." *Griggs v. Brewer*, 841 F.3d 308, 315 (5th Cir. 2016).

It is clearly established that officers are required to weigh any use of force against "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Another consideration is whether an arresting officer's use of force "involved measured and ascending responses to a [suspect's] noncompliance." *Buehler v. Dear*, 27 F.4th 969, 984 (5th Cir. 2022) (internal quotation marks omitted).

---

[5] Thornburg does not allege a claim for supervisor liability against Pisa. Dkt. 138 ¶ 1(dd).

Thornburg alleges that Chody, Ryle, Saenz, Hernandez, and Pisa immediately used a TASER, beanbag shotgun, and dog on him despite his compliance with law enforcement commands. These facts are sufficient to allege that the defendants' actions were objectively unreasonable in light of clearly established law regarding use of force against compliant arrestees. *See Parsons,* 2015 WL 5098807 at *1, 4 (finding allegations that officers punched, slapped, struck, and used TASERs on compliant arrestee were sufficient to rebut qualified immunity defense on motion to dismiss).

In sum, because Thornburg has pled sufficient facts to overcome qualified immunity, his claims against Chody, Ryle, Saenz, Hernandez, and Pisa should not be dismissed on that basis.

## V.  Request for Leave to Amend

In his Response, Thornburg seeks leave to file a Fourth Amended Complaint if the Court finds his pleadings deficient. Dkt. 167 at 62. Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000).

Because Thornburg's Section 1983 claims against the twenty-two deputy defendants listed above are time-barred, amendment of those claims would be futile. *Whitt*, 529 F.3d at 283. In addition, Thornburg offers no additional facts he would plead to cure the deficiencies in his Section 1983 claims against Williamson County for failure to train and supervise. Without proposed amendments, the Court is unable to assess whether amendment is warranted. *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant fails to apprise court of facts movant would plead in amended complaint to cure any deficiencies). Accordingly, Thornburg's request for leave to amend should be denied.

## VI.  Recommendations

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** the following Motions to Dismiss under Rule 12(b)(6) for failure to state a claim and **DISMISS** Plaintiff's claims against these individual defendants with prejudice as time-barred:

- Defendant Stephen Deaton's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 145);

- Defendant Mark Luera's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 147);

- Defendants Brian Dirner, Marco Gomez, David Oberg, Matthew Paniagua, Wayne Passailaigue, and Chris Pina's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 151); and

- Defendants Charles Duvall, Tre'vone Johnson, Justin Kopta, Jeremy Stewart, Alejandro Torres, Joe Waring, Josh Whinnery, and Kevin Willis' Motion To Dismiss Plaintiff's Third Amended Complaint, field January 10, 2022 (Dkt. 162).

The Court **FURTHER RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants Jason Johnston, Jason Brantley, Roel Alafa, Lorenzo Hernandez, James Johnson, David Nickel, and Kyle Pence's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 154). The Court recommends that the District Court **GRANT** the motion and **DISMISS** with prejudice Plaintiff's claims against Johnston, Brantley, Alafa, Johnson, Nickel, and Pence as time-barred. The Court recommends that the District Court **DENY** the motion as to Hernandez because the claim against him is not time-barred.

Finally, the Court **FURTHER RECOMMENDS** that the District Court **DENY** the following Motions to Dismiss:

- Defendant Williamson County's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 152);

- Defendant Frank Saenz's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 153);

- Defendant Robert Chody's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 158);

- Defendant Tim Ryle's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 160); and

- Defendant Chris Pisa's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 161).

Should the District Court adopt this Report and Recommendation in its entirety, the claims remaining will be Plaintiff's Section 1983 *Monell* claim against Williamson County; Plaintiff's claims for excessive force and bystander liability against Robert Chody, Tim Ryle, Frank Saenz, Lorenzo Hernandez, and Chris Pisa; and his claims for supervisory liability against Chody, Ryle, Saenz, and Hernandez.

## VII.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 27, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE